

# EMPLOYMENT AGREEMENT

THIS AGREEMENT is effective as of November 25, 2008 (the "Effective Date"), by and between MSI Inventory Services Corporation, its divisions, affiliates and subsidiaries (hereinafter "Employer") and Vincent Brookins (hereinafter "Employee").

RECITALS:

WHEREAS, Employer is engaged in the various business activities related to the inventory services industry, including, without limitation, performing independent audits of the inventory of customers, developing computer software and related technologies for the inventory industry and providing inventory consulting services to third parties;

WHEREAS, Employer desires to employ Employee in a capacity in which Employee may receive, utilize, have access to, contribute to or develop confidential and proprietary information; and

WHEREAS, such information is important to the future of Employer and Employer expects Employee to keep secret such proprietary and confidential information during his employment and for a reasonable period after employment; and

WHEREAS, Employer is only willing to employ, or continue the employment of, Employee on the terms, covenants and conditions hereinafter set forth; and

WHEREAS, Employee is willing to comply with the terms, covenants and conditions hereafter set forth in consideration for employment with Employer.

NOW, THEREFORE, in consideration of the mutual covenants and promises of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of all of which is hereby acknowledged, Employer and Employee hereby covenant, agree and promise as follows:

1.    Incorporation of Recitals.    The foregoing recitals are incorporated herein by reference.

2.    Definitions.    As used in this Agreement, the capitalized terms set forth below have the respective meanings set forth therein, and may be written in singular, plural or possessive form, or in verb tense or participle form, where appropriate:

"Affiliate" shall mean any person, corporation, partnership or other entity (i) with which joint enterprises are carried on with Employer, including I-Fran, Inc. or any present, future or former franchisee of I-Fran, Inc., (ii) which Employer owns or controls, is owned or controlled by, or with which it is under common ownership or control, (iii) in which Employer has any interest.

-1-

EXHIBIT

1

"Confidential and Proprietary Information" shall mean any and all information disclosed or made available to Employee or known by Employee as a direct or indirect consequence of or through his employment by Employer and not generally known in the industry in which Employer is or may become engaged, including, but not limited to, customers and brokers, marketing plans, trade secrets, product development, plans, publications, equipment, and financial information, and any information related to Employer's and its Affiliate's products, structures, processes, procedures, methods, formulae, techniques, services, or finances including, but not limited to, information relating to research, development, inventions, computer software, computer source codes, RF techonolgy, purchasing, accounting, engineering, marketing, merchandising, or selling techniques.

"Inventions" shall mean discoveries, concepts, and ideas, whether patentable or not, relating to any present, contemplated, or prospective activities, investigations or obligations of Employer, including, but not limited to, computer software, computer source codes, RF technology, products, devices, structures, processes, procedures, methods, formulae, techniques, trade secrets or services and any improvements to the foregoing.

3.    Nature and Place of Employment.    Employer hereby employs, engages, and hires Employee as a Branch Manager and Employee hereby accepts and agrees to such hiring, engagement, and employment. Subject to the supervision and pursuant to the orders, advice, and directions of Employer, Employee hereby agrees that he shall, at all times,  perform all of the duties and responsibilities set forth in the job description attached hereto as Exhibit "A"and such other duties as may be assigned to Employee from time to time by Employer. Employer reserves the right to unilaterally modify, amend or replaced Exhibit "A" or any portion thereof from time to time, without prior notice, in its sole discretion, and Employee hereby agrees to immediately abide by any such modification, amendment or replacement. Employee agrees to (i) serve Employer faithfully and to the best of Employee's ability; (ii) comply with all regulations and instructions issued by Employer, including, without limitation those set forth in any Employer handbook, policy or procedure, whether now existing or hereafter promulgated, or as same may be amended from time to time at the sole discretion of Employer; (ii) obey all lawful orders given by Employer, its managers, or other authorized person or persons; and (iii) to conduct himself at all times so as not to detract from, or reflect adversely on, the reputation of himself, Employer or Employer's products or services.

4.    Manner of Performance of Employee's Duties.        Employee agrees that Employee will, at all times, perform, faithfully, industriously, and to the best of the Employee's ability, experience, and talent, all duties that may be required of Employee pursuant to the terms of this Agreement, to the satisfaction of Employer. Such duties will be rendered at such places as Employer in good faith may require, or as the interests, needs, business, and opportunities of Employer will require or make advisable, in sole discretion of Employer.

5.    Term of Employment.      Employer agrees to employ Employee, at will, as a Branch Manager for a term commencing on the Effective Date hereof and continuing until terminated in accordance with this Agreement.

-2-

**EXHIBIT 1**

6.  <u>Devotion of Full Time to Business.</u>  During his scheduled or required work time, Employee will devote all of Employee's time, attention, knowledge, and skill solely and exclusively to the business and interest of Employer, and Employer will be entitled to all benefits, profits, and other issues arising from or incident to any and all work, services, and advice of Employee. Employee expressly agrees that, during the term of this Agreement, Employee shall not be interested, directly or indirectly, in any form, fashion, or manner, as partner, officer, director, stockholder, advisor, Employee, or in any other form or capacity, in any business similar to Employer's business or any allied business or trade.

7.  <u>Compensation and Expenses.</u>  During the term this Agreement, Employer will pay Employee, and Employee agrees to accept from Employer, in full payment for Employee's services, compensation at an annualized rate of $ _36,000._ per year, payable in accordance with Employer's regular schedule for the payment of wages, which is currently on a bi-weekly basis, but which may be modified by Employer at its sole discretion; provided, however, in no event shall Employer pay Employee less frequently than once a month. Employee shall be eligible to receive such bonuses, if any, as may be authorized and declared from time to time by the Board of Directors of Employer, in its sole discretion. Employer will withhold any taxes required to be withheld by federal, state, or local law in respect to any payment of compensation to Employee. Employer agrees to reimburse Employee for all reasonable and customary business expenses in accordance with Employer's policies, as same may exist or be amended from time to time. Reimbursement for such expenses shall be paid to Employee within thirty (30) days of Employee submitting proper documentation for reimbursement of such expenses to Employer. If Employer provides Employee with advanced funds for expenses and Employee fails to properly account for said advanced funds, Employee hereby expressly authorizes Employer to deduct and offset the full amount of any such unaccounted for advanced funds against any and all amounts owed by Employer to Employee, including, without limitation, salary, bonuses, compensation or expense reimbursements, and expressly waives any rights to the contrary.

8.  <u>Vacation and Leave Time.</u>  Employee shall be entitled such vacation, holiday leave and other and leave time as is provided for Employees pursuant to any Employer handbook, policy or procedure, whether now existing or hereafter promulgated, or as same may be amended from time to time at the sole discretion of Employer. The timing and date(s) for any vacation shall be at times suitable for the best interests of Employer and mutually agreeable to Employer, Employee and Employee's immediate supervisor.

9.  <u>Termination by Employer.</u>  Notwithstanding anything contained herein or in any handbook, policy or procedure of Employer to the contrary, Employee's employment with Employer is "at will" and Employer may immediately terminate the employment of Employee at any time, with or without cause, by giving Employee written notice of such termination.

10.  <u>Termination by Employee.</u>  Employee is entitled, with or without cause, to terminate his employment with Employer by giving Employer written notice of such termination at least thirty (30) calendar days prior to the effective date of termination. Provided, however, Employer in its sole discretion, shall have the right to waive or forego the thirty (30) day notice period, or any portion thereof, upon notice to Employee. Employee agrees that upon Employer giving notice of its

- 3 -

**EXHIBIT 1**

election to waive or forego the tnotice period given by Employee, or any portion thereof, Employee's termination notice shall be modified and changed to be effective, and his employment shall be deemed to have voluntarily ceased, as of the date selected by Employer. Employer shall have no obligation of Employer to compensate for any portion of the thirty (30) day notice period which it elects to waive or forego.

    11.   <u>Covenant Not to Compete</u>.   Employer is engaged in various business activities related to the inventory services industry, including, without limitation, performing independent audits of the inventory of customers, developing computer software and related technologies for the inventory industry and providing inventory consulting services to third parties, and has built up and established a valuable and extensive trade throughout the United States. Employee understands that, as an employee of Employer, he may receive, utilize, have access to, contribute to or develop Confidential and Proprietary Information (as defined below). Accordingly, Employee agrees that, in addition to any other limitation, during the term of Employee's employment with Employer and for a period of three (3) years from and after the date of termination of Employee's employment with Employer, regardless of the reason for termination or by whom the employment was terminated, he will not, directly or indirectly:

    a.   own, operate, manage, consult with, control, participate in the ownership, management or control of, be employed by, or maintain or continue any interest whatsoever in any business as a principal, owner, operator, agent, partner, stockholder, member, consultant, lender or in any other capacity, whether for profit or non-profit, which is in competition with Employer, its Affiliates (as defined below), or its subsidiaries, to any extent or in any manner, including, without limitation, engaging in providing inventory services, developing computer software for the computer industry or developing other technology for the inventory industry;

    b.   regardless of the reason, for himself, or on behalf of any other person, firm, corporation or other entity, solicit, contact, or attempt to solicit or contact any customer or client of Employer or any customer or client of any of its Affiliates or subsidiaries, whether present or former, for the purpose of soliciting or providing to any of the customers any inventory services, inventory related computer software or inventory related technology, and Employee will not, in any way, directly or indirectly, on Employee's own behalf, or on behalf of any other person, firm, or corporation, solicit, divert, or take away any customer or client, whether present or former, of Employer, its Affiliates, or its subsidiaries; and

    c.   enter the employ of, consult with, assist or otherwise provide any inventory services, inventory related computer software or inventory related technology to any customer or client, whether present or former, of Employer its Affiliates, or its subsidiaries.

The running of the time period specified in this section shall be tolled and suspended during such time as Employee is in violation of this covenant and shall begin to run again on the date upon which relief for such violation is granted to Employer.

**EXHIBIT 1**

12. <u>Covenant Against Enticement of Employees.</u>    Employee recognizes that any attempt to induce others to leave the Employer's employ, or an effort by Employee to interfere with Employer's relationship with other employees, would be harmful and damaging to the Employer. Employee expressly agrees that during the term of his employment and for a period of three (3) years following termination thereof, regardless of the reason for termination or by whom the employment was terminated, he will not in any way, directly or indirectly, induce or attempt to induce any employee to quit the Employer's employ or not perform employment duties, otherwise interfere with or disrupt the Employer's relationship with other employees, or solicit, entice, take away or employ (or assist or encourage the solicitation or hiring of) any person employed by Employer, its Affiliates or subsidiaries. The running of the time period specified in this section shall be tolled and suspended during such time as Employee is in violation of this covenant and shall begin to run again on the date upon which relief for such violation is granted to Employer.

13. <u>Covenant Against Disclosure of Secrets.</u>    Employee recognizes that in the performance of services on behalf of Employer, Employee may acquire Confidential and Proprietary Information which could gravely affect the success of Employer's business. Accordingly, except as is reasonably necessary in the ordinary course of performing his duties on behalf of Employer, Employee specifically agrees that during the term of his employment and for a period of three (3) years after termination of Employee's employment with Employer, regardless of the reason for termination or by whom the employment was terminated, he will not, at any time, in any fashion, form, or manner, either directly or indirectly, divulge, disclose, or communicate to any person, firm, or corporation in any manner whatsoever any Confidential and Proprietary Information of any kind, nature, or description concerning any matters affecting or relating to the business of Employer, including, but not limited to, the names of any of Employer's customers, the prices or terms it obtains or has obtained or at which the Employer sells or has sold its services or products, the computer software and related technology which has been developed, is being developed or is planned, or any other information concerning the business of Employer, its manner of operation, its plans, processes, methodology or other data of any kind, nature, or description without regard to whether any or all of the foregoing matters would be deemed confidential, material, or important. Upon termination of his employment with Employer, all papers, documents, records, lists, notebooks, files, and similar items containing Confidential and Proprietary Information, including copies thereof, then in the Employee's possession, whether prepared by him or others, shall be promptly returned to the Employer. If at any time after the termination of employment, the Employee determines that he has any Confidential and Proprietary Information in his possession or control, he shall immediately return to the Employer all such Confidential and Proprietary Information, including all copies and portions thereof. The running of the time period specified in this section shall be tolled and suspended during such time as Employee is in violation of this covenant and shall begin to run again on the date upon which relief for such violation is granted to Employer.

14. <u>Ownership of Inventions, Creative Works and Related Matters.</u>    With respect to all Inventions and creative works made, conceived or reduced to practice by Employee, which relate to Employer's business or technology, whether or not during the hours of his employment or with the use of Employer facilities, materials, or personnel, in whole or in part, either solely or jointly with others, during the term of his employment by the Employer and for a period of one (1) year after any termination of such employment, Employee covenants and agrees as follows:

- 5 -

EXHIBIT

1

a. All Inventions and creative works which Employee produces, makes, conceives or reduces to practice during his employment, whether or not during the hours of his employment or with the use of Employer's facilities, materials, or personnel, in whole or in part, either alone or jointly with others, and which relate to Employer's business or technology, shall be considered to have been prepared for Employer as a part of and in the course of Employee's employment. Any such work shall be owned by the Employer regardless of whether it would otherwise be considered a work made for hire. Such works shall include, among other things, computer programs, source codes and documentation, non-dramatic library works (e.g., professional papers and journal articles), visual arts (e.g., pictorial, graphic and three-dimensional), sound recordings, motion pictures and other audiovisual works. Employee hereby agrees that all such Inventions and creative works shall be the sole and exclusive property of Employer, whether patented or copyrighted or not, and Employee hereby assigns to Employer all of his right, title and interest in and to such Inventions and creative works and to all proprietary rights therein, based thereon or related thereto, including, but not limited to, applications for United States and foreign letters of patent and resulting letters of patent or United States and foreign copyright, or other similar rights, without royalty or any other consideration. Employee shall execute, acknowledge, and deliver any and all instruments conveying, confirming or otherwise affecting such ownership by the Employer of such Inventions and creative works, and shall execute such documents and provide such assistance as may be deemed necessary by Employer to apply for, defend, or enforce any United States and foreign letters patent, copyright or other similar rights based on or related to such Inventions or creative works. Employee shall execute, acknowledge, and deliver any and all instruments conveying, confirming or otherwise affecting such ownership by Employer of such Inventions and creative works;

b. Employee shall inform the President of Employer promptly and fully of such Inventions and creative works and upon request by such person, communicate to Employer promptly and fully in writing, in such format as the Employer may deem appropriate, all Inventions and creative works in such details as are necessary to explain the structures, procedures, and methodology employed and the results achieved;

c. Employee will make and maintain adequate permanent records of all such Inventions and creative works, in the form of memoranda, notebook entries, drawings, print-outs, or reports relating thereto, in keeping with then current Employer procedures. Employee agrees that these records, as well as the inventions themselves, shall be and remain the property of Employer at all times;

d. Employee agrees to cooperate with and assist the Employer and its nominees, at their sole expense, during his employment and thereafter, in securing and protecting patent, copyright or other similar rights in the United States and foreign countries in inventions and creative works conceived or produced by him during his employment with the Employer. In this connection, Employee specifically agrees to execute all

6

EXHIBIT 1

papers which the Employer deems necessary to protect its interests including the execution of assignments of invention and copyrights and to give evidence and testimony, as may be necessary, to secure and enforce the Employer's rights. Further, Employee hereby appoints Employer as his agent and attorney-in-fact to act for and in its behalf and stead to execute, register, and file any applications, and to do all other lawfully permitted acts to further the registration, prosecution, issuance, renewals, and extensions of patents, copyrights or other protections with the same legal force and effect as if personally executed by Employee; and

e.   Employee represents and warrants that all the material prepared by him for use in Inventions and creative works prepared for Employer will not infringe the rights of any other work.

15.   Use of Information and Return of Records.   Employee further covenants and agrees with Employer as follows:

a.   Except as Employer may otherwise authorize in writing, Employee will not use or disclose to others, reproduce or copy at any time, except as his job duties may require, either during or subsequent to his employment, any private information of Employer or of customers or clients as to whom the Employer has an obligation of confidentiality which may come to his attention or be developed by him during the course of his employment other than information which is or becomes public knowledge in a lawful manner. Following termination of his employment for whatever reason, Employee will honor and abide by his continuing obligation of confidentiality. Employee agrees that, in any situation which arises and involves a question of his freedom to disclose particular information to a subsequent employer or anyone else, Employee will contact the Employer in writing and elicit and abide by its opinion on his freedom to make such a disclosure.

b.   Upon termination of his employment with Employer, regardless of the reason, Employee shall deliver to Employer all records, data and memoranda of any nature which are in his possession or control and which relate to his employment or the activities of Employer, including, without limitation, notebooks, diaries, reports, photographs, films, manuals and computer software media. Employee shall not keep or retain any copies or duplications, in any form, of the items covered by this provision, except as required for Employee's tax-reporting purposes; provided, that any such information retain for tax-reporting purposes shall only be provided to third parties on a need "to know" basis and, except for governmental agencies, only after such third party has agreed to the information confidential.

c.   Employee shall not disclose to any other employee, officer, owner, director, shareholder, consultant, agent or representative of Employer or its Affiliates, any information as to which he owes a continuing obligation of confidentiality to a previous employer or client.

**EXHIBIT 1**

16. <u>Enforcement of Covenants</u>. Employer and Employee stipulate that, as between them, the covenants contained in Sections 11 through 15 hereof are important, material, and reasonable and gravely affect the effective and successful conduct of the business of Employer and its goodwill, and that a suit for damages upon violation or breach for any of the covenant provisions of this Agreement will be inadequate. Employee further acknowledges that a violation of the covenants contained herein would cause irreparable injury to Employer. Employee agrees that, in the event of any violation or breach, or threatened violation or breach, of this Agreement, Employer shall have the right, in addition to any other rights or remedies available at law or in equity, to obtain injunctive relief against Employee by any court or competent jurisdiction having the authority to grant such relief, and that if Employer is required to seek enforcement of said covenants, Employee will be liable for the Employer's cost incurred therein, including reasonable attorney's fees. Employer and Employee agree that the covenants contained herein are severable and separate, and the unenforceability of any specific covenant therein will not affect the validity of any other covenant. The covenants on the part of the Employee shall be construed as an agreement independent of any other provision in this Agreement, and the existence of any claims or causes of action by Employee against Employer, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by Employer of the covenants.

17. <u>Employee's Commitments Not Binding on Employer</u>. Notwithstanding anything in this Agreement to the contrary, it is expressly understood and agreed that Employee does not have the right to make any contracts or commitments on behalf of Employer without the written consent of Employer.

18. <u>No Release</u>. Employee acknowledges and agrees that the termination of his employment with Employer or the expiration of the term of this Agreement shall not release Employee from any covenants or obligations contained herein.

19. <u>Miscellaneous</u>.

19.1. This Agreement contains the sole and entire agreement between the parties and supersedes any and all other agreements between the parties. The parties acknowledge and agree that neither of them has made any representation with respect to the subject matter of this Agreement or any representations inducing the execution and delivery of this Agreement, except such representations as are specifically set forth in this Agreement, and each of the parties acknowledges that such party has relied on such party's own judgment in entering into the agreement.

19.2 Nothing contained in this Agreement shall be construed or confer any obligation or right to employment or to continue in the employment of the Employer. The parties expressly agree that Employee shall remain an employee at will. Any matters related to Employee's employment with Employer not expressly provided for herein shall be governed by Employer's handbook, policies and procedures, if any, as they may exist or be amended from time to time in the sole discretion of Employer. If any provisions of such handbook, policies and procedures conflict with any provisions of this Agreement, the terms of this Agreement shall prevail.

19.3 A waiver or modification of this Agreement or of any covenant, condition, or

- 8 -

EXHIBIT 1

limitation in this agreement will not be valid unless it is in writing and executed by the party to be charged, and evidence of any waiver or modification will not be offered or received in evidence in any proceeding, arbitration, or litigation between the parties arising out of or affecting this Agreement, or the rights or obligations of any party under this agreement, unless such waiver or modification is in writing, executed by the party to be charged.

19.4    The parties further agree that the provisions of this Agreement may not be waived except as set forth in this Agreement.

19.5    The parties agree that it is their intention and covenant that this Agreement, performance under this Agreement, and all suits and special proceedings under this Agreement, be construed in accordance with, and under and pursuant to, the laws of the State of Mississippi and that, in any action, special proceeding, or other proceeding that may be brought arising out of, in connection with, or by reason of, this Agreement, the laws of the State of Mississippi will be applicable and will govern, to the exclusion of the law of any other forum, without regard to the jurisdiction in which the action or special proceeding may be instituted, and notwithstanding the fact that one or more of the parties to this Agreement is now or may become a resident or citizen of a different state.

19.6    This Agreement is binding on, and inures to the benefit of, the respective parties and their executors, administrators, heirs, legal representatives, successors, and assigns.

19.7    The invalidity, illegality, or unenforceability of any particular provision of this Agreement shall not affect the other provisions, and this Agreement shall be construed in all respects as if such invalid, illegal, or unenforceable provision had been omitted. If any part of this Agreement is for any reason held to be excessively broad as to time, duration, geographical scope, activity or subject, it will be construed, by limiting or reducing it, so as to be enforceable to the extent reasonably necessary for the protection of Employer.

19.8    Captions to and headings of the sections of this Agreement are solely for the convenience of the parties and not a part of this Agreement and shall not be used for the interpretation or determination of the validity of this Agreement or any provision hereof.

19.9    All notices and other communications under this Agreement shall be in writing and shall be deemed given when delivered personally, transmitted by facsimile (provided that a copy of such facsimile is sent by certified mail, return receipt requested) or at the expiration of three (3) days after being sent by certified mail, return receipt requested, to the parties as follows:

To Employer:        MSI Inventory Services Corporation
                    Attn: James O. McClain, President
                    Post Office Box 320129
                    Flowood, Mississippi 39232-0129
                    Facsimile: (601) 939-0061

EXHIBIT
1

To Employee:

The address to which notices or other communications shall be mailed shall be changed from time to time by giving written notice to the other party as provided above.

19.10  All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require.

19.11  Employee warrants and represents that he is free to enter into this Agreement and perform the services contemplated hereby and that such actions will not constitute a default under any existing agreement.

19.12  This Agreement may be executed in any number of copies, each of which shall be deemed an original and no other copy need be produced.

19.13  If it becomes necessary for Employer to undertake any litigation or to employ an attorney to assist Employer in pursuit of or protection of its rights under this Agreement, Employee shall obligated to reimburse Employer for all such attorney fees, related costs and expenses.

IN WITNESS WHEREOF, the parties have executed this agreement at Flowood, Mississippi the day and year first above written.

**EMPLOYER:**

MSI INVENTORY SERVICES CORPORATION

By: _____

James O. McClain, President

**EMPLOYEE:**

_____

**EXHIBIT**

1